UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA SCHECK, on behalf of herself and other similarly situated employees, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:17CV2480<br><br>JUDGE JOHN R. ADAMS<br><br>**ORDER** |
| Plaintiff, | | |
| v. | | |
| MAXIM HEALTHCARE SERVICES, INC., | | |
| Defendant. | | |

This matter is before the Court upon Defendant Maxim Healthcare Services, Inc. ("Maxim") Motion to Dismiss Plaintiff's Linda Scheck's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed the motion to dismiss. Having considered the parties' arguments, the Court holds that the Motion to Dismiss (Doc. 9) is **GRANTED IN PART**. The reasons for the Court's decision are set forth below.

**I.    BACKGROUND**

Plaintiff brings this putative class action against her former employer, Maxim, under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and Ohio law, for unpaid overtime compensation from January 1, 2015 to October 31, 2015. In the context of a motion to dismiss, the Court accepts Plaintiff's statement of facts regarding Maxim's operations.

Maxim provides in-home personal care, management, and/or treatment of a variety of conditions by nurses, therapists, medical social works, and Home Health Aids

1

("HHAs"). (Doc. 1, ¶ 11.) Plaintiff worked for Maxim as an HHA, allegedly from approximately July 1, 2010 to July 1, 2016. (*Id.*, ¶ 7.) As an HHA, Plaintiff provided companionship services "in the homes of [Maxim's] clients to whom she was assigned." (*Id.*, 18.) Consequently, she was classified as an exempt employee under the FLSA, pursuant to the companionship services exemption. (*Id.*, ¶ 19.) During Plaintiff's employment, she worked more than 40 hours in some workweeks. (*Id.* at ¶¶ 8, 18.) Because Plaintiff was an exempt companionship services employee, however, Maxim paid her straight time for all hours worked over 40 in a workweek.

In mid-October 2015, Maxim began paying "full and complete overtime compensation" to all HHAs nationwide, including Plaintiff. (*Id.*, ¶ 33.) Plaintiff filed this lawsuit more than two years later, on November 27, 2017.

## II. STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the complaint. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 795 (N.D. Ohio, 2012). The Court accepts as true all well-pleaded factual allegations and construes the complaint in the light most favorable to the plaintiff. *Id.* This does not mean, however, that everything in a complaint, or every inference that can be drawn therefrom, must be accepted at face value. The Court need not accept legal conclusions or unwarranted factual inferences at the motion to dismiss stage. *Id*. A complaint must "provide the grounds of [the plaintiff's] entitlement to relief," which "requires more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted). "[A] formulaic recitation of the elements of a cause of action will not do" to overcome a motion to dismiss. *Id.*

## III. DISCUSSION

This suit concerns the "Home Care Final Rule" (or, the "Final Rule"), a rule promulgated by the United States Department of Labor in 2013 to extend FLSA wage and overtime protections to home care workers. The D.C. Circuit's decision in *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1087-90 (D.D.C. 2015) summarizes the relevant history of the companionship services exemption and third-party employer regulation.

Congress amended the FLSA in 1974 to exempt employees providing "companionship services" from the statute's minimum wage and overtime provisions. *Id.* at 1087. The Department of Labor ("DOL") adopted implementing rules in 1975 and, for the next 38 years, the governing rule permitted third-party employers to rely upon the companionship services exemption. *Id.* at 1088-89.

In 2013, the DOL adopted the new Home Care Final Rule, which provided that third-party employers could no longer "avail themselves" of the FLSA's companionship services exemption. *Id.* at 1089. The DOL chose to delay implementation of the regulation until January 1, 2015. *Id*.

In December 2014, shortly before the third-party-employer regulation was scheduled to take effect, the U.S. District Court for the District of Columbia ruled that it was invalid under the framework established in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984). *Weil*, 799 F.3d at 1089-90 (citing *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014)). The district court vacated the third-party-employer regulation, thereby preventing it from going into effect. *Weil*, 799 F.3d at 1090.

The DOL appealed the district court ruling, and on August 21, 2015, the D.C. Circuit reversed the lower court. *Id.*, 799 F.3d at 1084. Subsequently, the DOL issued

3

guidance stating that it would not institute enforcement proceedings for violations of the regulation until 30 days after the Court of Appeals issued its mandate. *See* 80 Fed. Reg. 55029 (Sept. 14, 2015).

The D.C. Circuit issued its mandate on October 13, 2015. The DOL then indicated that it would not bring enforcement actions for violations of the regulation prior to November 12, 2015. *See* Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65646 (Oct. 27, 2015).

Plaintiff filed her lawsuit on November 27, 2017. Plaintiff's FLSA claim is premised entirely on her contention that the DOL's Home Care Final Rule became effective on January 1, 2015, the original effective date. If January 1, 2015 is in fact the effective date, then Plaintiff and other similarly-situated HHA's are owed overtime between that date and mid-October, 2015, when Maxim began paying overtime. (Doc. 1, ¶ 28.) Plaintiff's FLSA claim fails if this Court concludes that the third-party-employer regulation did not become effective on January 1, 2015, but instead became effective on October 13, 2015, when the D.C. Circuit issued its mandate overturning the district court's 2014 order vacating the rule. Thus, the issue before the Court pursuant to Maxim's Motion to Dismiss is whether recovery for unpaid overtime under the third-party-employer regulation should begin with alleged violations occurring on January 1, 2015, or should be limited to the period after October 13, 2015.

The Sixth Circuit has not addressed this issue, and federal courts across the country have come to conflicting conclusions. Indeed, district courts within the Southern District of Ohio have reached opposite conclusions regarding the appropriate effective

4

date of the Home Care Final Rule. *Compare Bangoy v. Total Homecare Sols., LLC*, Case No. 1:15CV573, 2015 WL 12672727, *3 (S.D. Ohio Dec. 21, 2015) (finding that forcing employers to comply with the DOL's overtime rule while it was vacated and on appeal would put them "in an untenable position"), *and Lee v. Caregivers for Indep., LLC*, Case No. 1:16CV946, 2017 WL 2666413, *5 (S.D. Ohio June 21, 2017) (finding that, because the district court in *Weil* vacated the Home Care Final Rule before it became effective, "the sequence of events created a legal nullity which prevented the regulation from ever taking effect until the D.C. Circuit issued its mandate on October 13, 2015"), *with Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1039 (S.D. Ohio, 2018) (the principle of retroactivity of judicial decisions compels the conclusion that the Final Rule became effective as of January 1, 2015), and *Dillow v. Home Care Network, Inc.* Case No. 1:16CV612, 2017 WL 749196, * 5 (S.D. Ohio Feb. 27, 2017) (holding that the effective date of the regulation at issue is January 1, 2015), *and Richert v. LaBelle Homehealth Care Serv. LLC,* Case No. 2:16CV437, 2017 WL 4349084, *2 (S.D. Ohio Sept. 29, 2017) (holding that the effective date of the Home Care Final Rule is January 1, 2015 in accordance with the "well-established rule that judicial decisions are presumptively retroactive in their effect and operation"), and *Rembert v. A Plus Home Health Care Agency LLC*, Case No. 2:17CV387, 2018 WL 2015844, *3 (S.D. Ohio May 21, 2018) (finding that the Final Rule to effect on January 1, 2015 in adherence with the principle of retroactive application of judicial decisions).

In what appears to be the only decision out of the Northern District of Ohio to date on this issue, a judge of this Court found that the principle of retroactivity of judicial decisions compels a conclusion that the Final Rule became effective on January 1, 2015.

*See Kennedy v. Certain Care, LLC*, Case No. 1:17CV2444, 2018 WL 1224360, *2-3 (N.D. Ohio March 9, 2018) (Gwin, J.).

It appears that the majority of district courts that have ruled on the issue have held that the DOL's Home Care Final Rule became effective on January 1, 2015. *See Brittmon*, 285 F. Supp. 3d at 1039 (citing decisions holding that the Final Rule became effective on January 1, 2015). The analysis begins under *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed. 74 (1993), with the general retroactivity principle set forth in that case. Under the *Harper* retroactivity principle, judicial decisions, as opposed to statues and regulations, apply retroactively. Accordingly, when a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the court's] announcement of the rule." *Id.*

This Court likewise finds that a straightforward application of the retroactivity principle set forth in *Harper* requires a finding that, in view of the D.C. Circuit's reversal of the district court's vacatur of the Home Care Final Rule, the Final Rule became effective on January 1, 2015. Thus, "'when the D.C. Circuit held that the third-party exemption was valid, this holding applied to *all* prospective defendants for any period after the rule went into effect'." *Brittmon*, 285 F. Supp. 3d at 1039 (citing *Green v. Humana at Home, Inc.*, 2017 U.S. Dist. LEXIS 162961, *6 (S.D.N.Y. Sept. 29, 2017)).

Maxim raises several arguments why this Court's decision to recognize a January 1, 2015 effective date is in error. Maxim's arguments support the contrary position that

the effective date of the third-party-employer regulation was no earlier that October 13, 2015, when the D.C. Circuit issued its mandate.

Among Maxim's arguments is the contention that the DOL's decision not to enforce the Final Rule until November 12, 2015, or 30 days after the D.C. Court of Appeals' mandate, evidences that the Final Rule's effective date is (at the earliest) October 13, 2015. This Court disagrees. The DOL's non-enforcement policy was merely an elective course of action regarding enforcement of a regulation – it did not in any way modify the Final Rule itself, or its effective date. "If evidence were needed to support this position, it would come from the DOL's own prior guidance on the effective date of the Final Rule." *Brittmon*, 285 F. Supp.3d at 1041. As the *Brittmon* court explained:

> In October 2014, the DOL issued guidance explaining that it would defer enforcement of the Final Rule until July 1, 2015, even though its effective date would remain January 1, 2015. 79 Fed. Reg. 60974 (Oct. 9, 2014). Then, after July 1, 2015, and until December 31, 2015, the DOL stated it would exercise prosecutorial discretion and determine on a case-by-case basis whether an employer's violation of the Final Rule warranted enforcement action by the DOL. *Id.* This guidance thus demonstrates that the DOL's non-enforcement decisions have no bearing on the effectiveness of the Final Rule. *Id.*

*Id.*

Indeed, for this Court to conclude that the Final Rule became effective on any date other than that established by the DOL would commandeer the rule-making authority of the DOL – one of the chief concerns that the *Harper* retroactivity principle intended to address. *See Harper*, 509 U.S. at 95, 113 S.Ct. 2510 ("[T]he nature of judicial review strips [the court] of the quintessentially legislative prerogative to make rules of law retroactive or prospective as [it] see[s] fit." (quoting *Griffith v. Kentucky*, 479

7

U.S. 314, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1993) (internal quotation marks omitted)); *see also Kinkead v. Humana, Inc.*, 206 F.Supp.3d 751, 752 (D. Conn. 2016) (denying the third-party employer's motion for "dismissal on a theory that would negate the agency's choice of an effective date and preclude retroactive application of the D.C. Circuit's decision"). Instead, the retroactivity rule requires that all third-party employers be subject to the Home Care Final Rule on January 1, 2015, the effective date that has always been in effect according to the D.C. Circuit Court in *Weil*, and not some other date that a court deems equitable. *Brittmon*, 285 F. Supp. at 1041.

Maxim further argues that *Harper* does not apply here because the D.C. District Court vacated the Home Care Final Rule prior to the date it went into effect, rendering the Final Rule a legal nullity. (Doc. #9, p. 10) (citing *Bangoy*, 2015 WL 12672727, at *3; *Lee* 2017 WL 2666413, at *4; *MCI Telecomms. Corp. v. GTE Northwest, Inc.*, 41 F. Supp. 2d 1157, 1163 (D. Or. 1999)). Again, this Court disagrees. In the Court's view, the distinction between judicial decisions reversing a rule's vacatur prior to the rule's effective date, and those decisions advancing a new or contrary interpretation of a rule already in effect, does not have any consequence for the application of *Harper*. *Harper* instead requires a finding that a court decision that an agency had authority to promulgate a rule means that the agency "'always had such [authority] and that the rule[] appl[ies] as of the effective date originally scheduled.'" *Brittmon*, 285 F. Supp. 3d at 1041 (quoting *GTE S., Inc. v. Morrison*, 199 F.3d 733, 740 (4th Cir. 1999)).

Maxim also raises the concern that retroactive application of the D.C. Circuit's decision in *Weil* is inequitable because it requires employers to choose whether to comply with a regulation that has been vacated, or risk having to go back in time to comply with

8

the regulation if and when the vacatur is overturned. This argument, while not entirely without merit, is unpersuasive. There was always a foreseeable possibility that the trial court's decision in *Weil* would be reversed on appeal as a natural consequence of the appellate process. Moreover, the Court finds it far more inequitable to permit Maxim to avoid liability for months of overtime pay based on a district court decision that ultimately was deemed to be erroneous. To hold otherwise would penalize HHAs like Plaintiff for the trial court's error. It could also create incentive under certain circumstances for employers to drag out litigation as long as possible, and thereby save a considerable amount of money in wages, even if ultimately unsuccessful on appeal. A more fair and equitable holding than the one Maxim favors is that any party involved in continuing litigation should be prepared for the implications of retroactive application of an adverse ruling on appeal.

Maxim also makes much of the fact that the D.C. Circuit stated in *Weil* that third-party employers such as Maxim were permitted to "make use of the companionship-services exemption" following the district court's vacatur of the Final Rule. *Weil*, 799 F.3d at 1090. According to Maxim, "[t]hat statement directly disproves Plaintiff's assertion that Maxim should now be held retroactively liable for lawfully relying on the companionship services exemption following the district court's vacatur of the third-party-employer regulation." (Doc. 9, p. 8.) Maxim attributes far too much significance to this statement, however. The D.C. Circuit's observation – that third-party employers could make use of the companionship-services exemption following the vacatur but prior to reversal of the district court by the court of appeals – is not controversial. However, neither this statement, nor anything else in *Weil*, addresses the consequences of the

9

reversal in terms of retroactive application of the appellate court's decision, or the implications of retroactive application for the effective date of the Final Rule. On the other hand, *Harper* compels a conclusion that, after the D.C. Circuit's reversal of the district court's vacatur of the Home Care Final Rule, the Final Rule became effective on January 1, 2015.

For all of the reasons stated, the Court holds that the effective date of the Home Care Final Rule is January 1, 2015. The Court rejects the contention that the effective date was October 13, 2015, when the D.C. Circuit issued its mandate, or at a later date when the DOL commenced enforcement of the rule.

Having determined that the Home Care Final Rule should be retroactively applied to January 1, 2015, the Court now looks to the statute of limitations applicable to Plaintiff's FLSA claims. For the reasons that follow, the Court finds that Plaintiff's FLSA claims are subject to a two-year statute of limitations. Thus, Plaintiff's claims are limited to the two years prior to the filing of the Complaint, and not the three years Plaintiff proposes.

Under the FLSA, claims are bound by two-year statute of limitations, unless a plaintiff can demonstrate that a defendant committed a "willful violation" of the Act. If a plaintiff shows willfulness, a three-year limitations period applies. 29 U.S.C. § 255(a). For an FLSA violation to be considered willful, a plaintiff must show "that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Noncompliance with the FLSA that is merely negligent, even if unreasonable, is not considered willful. *Id.* at 135, n. 13. Indeed, allegations of willfulness "must be far stronger" than a mere allegation that a defendant "knew or had reason to

know" of its alleged FLSA violations. *Hurd v. NDL, Inc.*, No. CIV. CCB-11-1944, 2012 WL 643425, at *6 (D. Md. Feb. 27, 2012).

Here, Plaintiff does not allege facts that amount to willful conduct. Plaintiff alleges only that from January 1, 2015 to October 31, 2015: (1) Maxim "was aware" of its obligation to pay overtime to HHAs; (2) Maxim "did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law; (b) the FLSA, 29 U.S.C. § 201, et seq.; (c) Department of Labor Wage & Hour Opinion Letters; or (d) the Code of Federal Rule;" and (3) Maxim acted "willfully" in not paying overtime compensation to its HHAs. (Doc. #1, ¶¶ 39-41.) However, none of these statements arise above wrote and conclusory legal allegations, or amount to "facts" about the defendant's mental state. "Although conditions of a [defendant's] mind may be alleged generally," it remains true that "the plaintiff still must plead facts about the defendant's mental state which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014). Because Plaintiff has pled nothing more than conclusory assertions about Maxim's willfulness, and because Plaintiff has failed to plead any state-of-mind allegations that are plausible on their face, the Complaint's allegations of willfulness are insufficient to meet the *Iqbal/Twombly* pleading standard. *See, e.g.*, *Stout v. FedEx Ground Package Sys., Inc.,* Case No. 3:14CV02169, 2015 WL 7259795, at *4 (N.D. Ohio Nov. 17, 2015) (holding that the amended complaint did not contain factual allegations about the defendant's mental state to support a plausible inference of willfulness where the plaintiffs alleged only that (1) they were employees, (2) defendant knew the FLSA required it to classify plaintiffs as employees or independent contractors, (3) the defendant classified the plaintiffs as independent contractors, and (4)

the defendant did so willfully). Accordingly, Plaintiff's FLSA claims are limited to a two-year period.

Moreover, the above-described judicial landscape concerning the Home Care Final Rule makes it impossible as a matter of law for Maxim to have committed a willful violation of the FLSA in this instance. The D.C. District Court's vacatur of the Final Rule, the split of authority over the question of when the third-party-employer regulation became effective, and the Department of Labor's decision to delay enforcement until November 12, 2015 all establish that Maxim had an objectively reasonable basis to believe that it was not required to pay Plaintiff overtime wages until at least October 13, 2015. *See Guerrero v. Moral Home Servs., Inc.*, 247 F. Supp. 3d 1288, 1293-1294 (S.D. Fla. 2017) (finding a lack of "willfulness" in failure to pay overtime wages due to the procedural history of the Home Care Final Rule). Additionally, Maxim's decision not to pay HHAs overtime from January 1, 2015 to mid-October 2015 was in harmony with a District of Maryland decision specifically informing Maxim – the defendant in that case – that the third-party-employer regulation should not be retroactively applied to January 1, 2015. *See Flamer v. Maxim Healthcare Servs. Inc.*, No. 1:15CV02070, 2015 WL 12762067 (D. Md. Oct. 26, 2015). Given that Maxim's specific conduct challenged by Plaintiff here was approved as to Maxim by another federal district court, Maxim cannot have acted willfully to violate the FLSA as a matter of law. There is no amount of additional discovery requested by Plaintiff that will alter the judicial landscape concerning the Home Care Final rule, or the ruling of the *Flamer* court. Accordingly, Plaintiff's claim of "willfulness" regarding Maxim's violation of the FLSA fails as a matter of law.

Absent a viable claim that Maxim willfully violated the FLSA, the statute of limitations governing Plaintiff's FLSA claims is two years. Plaintiff's FLSA claims are limited to the two years prior to the filing of the Complaint, and not the three years Plaintiff proposes. Any of Plaintiff's FLSA claims falling outside of the two years must be dismissed.

In addition to Plaintiff's claims under the FLSA, Plaintiff has brought Ohio law claims under R.C. § 4111.01 ("OMFWSA") (Count II), and R.C. § 4113.15 (the "Ohio Prompt Pay Act") (Count III). Plaintiff has dismissed her claim under the OMFWSA, without prejudice. (Doc. 12, p. 14, n. 9.) Maxim contends that Plaintiff's remaining Ohio law claims under the Prompt Pay Act are subject to a two-year statute of limitations. In contrast to the FLSA, "Ohio law provides for a two-year statute of limitations for claims based upon unpaid overtime compensation, but does not provide for an extension in the case of a willful violation by the employer." *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 893 (S.D. Ohio 2004); *see also Terry v. Pro-Mark Contracting, LLC*, No. 1:14CV2542, 2016 WL 3421399, *5 (N.D. Ohio June 22, 2016). Thus, Plaintiff has no timely claim under the Prompt Pay Act because she filed her Complaint on November 27, 2017.

Plaintiff argues as to her Prompt Pay Act claim only, that it is the date of the D.C. Circuit's mandate – October 13, 2015, and not January 1, 2015 – that should be used as the operative date for purposes of calculating the statute of limitations for all Prompt Pay Act claims that accrued between January 1, 2015 and October 13, 2015. This is an improper attempt for Plaintiff to have her cake and eat it too. Plaintiff's entire theory of this case hinges on her contention that the effective date of the Home Care Final Rule is January 1, 2015. The Court has agreed. Plaintiff cannot credibly change course for one claim only

in order to assert timely Prompt Pay Act claims. Under the January 1, 2015 effective date, Plaintiff's Prompt Pay Act claims are limited to the two years prior to the filing of the Complaint.

Plaintiff's Prompt Pay Act claims are also time-barred under her argument that all liability is based on an October 13, 2015 effective date. Plaintiff's statute of limitations argument is contingent upon her contention that the Prompt Pay Act provides a cause of action when wages remain unpaid "for sixty days beyond the date of the agreement, award, or other act making wages payable." (Doc. 12, p. 14.) Based on that contention, Plaintiff argues that her Prompt Pay Act claim was timely filed because: (1) Defendant refused to pay her owed overtime by December 15, 2015 (60 days after the October 13, 2015 mandate in *Weil*); and (2) she filed her Complaint within two years of December 15, 2015. (*Id.* at 15.)

Plaintiff's theory fails, however, because the plain text of the Prompt Pay Act specifies that a 30-day deadline, and not a 60-day deadline, applies in this case. In particular, because Plaintiff apparently had a "regularly-scheduled payday," a 30-day deadline applies. R.C. § 4113.15(B) (applying a 30-day deadline unless there is no regularly-scheduled payday, in which case a 60-day deadline applies). Using the applicable 30-day deadline, Plaintiff's own theory results in the statute of limitations period starting on November 12, 2015 (30 days after the October 13, 2015 proposed mandate-driven effective date of *Weil*), and ending on November 12, 2017. Because Plaintiff filed

her Complaint on November 27, 2017, two weeks after the statute of limitations period ended, her Prompt Pay Act claim is time-barred, and must be dismissed.

## IV.     CONCLUSION

For the reasons stated, Maxim's Motion to Dismiss under Rule 12(b)(6) (Doc. 9) is **GRANTED IN PART**.  Although the Court holds that the effective date for the Home Care Final Rule is January 1, 2015, the Court also finds that Plaintiff's Complaint fails to state a claim for "willful" violations of the FLSA.  Accordingly, Plaintiff's FLSA claims are subject to a two-year statute of limitations, and are limited to the two years prior to the filing of the Complaint.  The Court further holds that Plaintiff's claims under Ohio's Prompt Pay Act are barred by the applicable two-year statute of limitations.

**IT IS SO ORDERED.**

  _s/John R. Adams_____
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE


**DATED**:  __8/8/2018_____